CIACCIO, Judge,
concurring in the result.
I concur with the majority’s conclusion that defendants’ convictions must be reversed, but I disagree with other conclusions reached in the majority opinion.
I agree that instructing the jury to limit its consideration of “community” to New *614 Orleans or Orleans Parish is error. But I do not find that such an instruction in this case resulted in any prejudice to defendants warranting reversal of the convictions. The City of New Orleans is geographically congruous with Orleans Parish, and in population, by comparison with the rest of the state, is relatively large and cosmopolitan. The community from which the jurors are called to serve is Orleans Parish, even though they probably consider their community as the metropolitan area which extends across parish boundaries. No showing has been made, however, that by limiting the metropolitan community to the statistically large sample community of Or: leans Parish in any way affects the determination of objective contemporary community standards regarding obscenity.
The better practice for the trial judge is not to limit the jurors’ concept of community, and, if anything, to encourage expansion so the jurors are instructed to determine objective rather than subjective standards. But when the limiting instruction provides the jurors a community as large, diverse and culturally integrated as Orleans Parish, and no showing is made that including the neighboring parishes into which the metropolis extends would have liberalized the objective contemptorary community standards, I find no prejudice to defendants. I would not reverse on this assignment of error.
Neither would I reverse on the assigned error regarding the inclusion of “lustful” in the jury instruction defining “prurient interest.” I agree that in many contemporary usage contexts “lustful” connotes a sexual interest which is not obscene or criminal. I do not find such a connotation in the context of the trial judge’s instruction to the jury in this case.
Increasingly tolerant contemporary community attitudes toward sex (in all its connotations) have expanded the connotations of “lust.” Words within a text are understood contextually, however, not in a vacuum equally valuing all connotations. Because contemporary language usage appropriately defines as “lustful” behavior and material which is neither obscene nor criminal, the trial judge instructing a jury is well advised to avoid “lustful” in his definition of prurient interest. I find, however, that the jury instruction in this case provided a context which excluded the expanded non-criminal, non-obscene connotations of “lustful,” and did not instruct the jury to convict defendants if the movies appealed to no more than a healthy interest in sex.
As to reversal on the assigned error of the failure to instruct the jury that the diversion agreement has no evidentiary value, I concur. The diversion agreement provides no insight into the law of obscenity and offers no proof of any violation of La.R.S. 14:106. By entering the agreement defendants did not admit guilt; the language of the agreement expressly declines any admission of guilt. The diversion agreement and any inference which may be drawn from it do not address any material issue concerning defendants’ guilt; the agreement is immaterial. The manner in which it was used by the assistant district attorney was most impermissible.
Defendants were arrested for distributing Sex Boat, and accepted the district attorney’s offer of diversion rather than prosecution in return for their agreement not to violate La.R.S. 14:106. Ultimately, on the charge of violating La.R.S. 14:106 by distributing Sex Boat, defendants were found not guilty. As to a violation of La.R. S. 14:106 by distributing any other movie, defendants have not been properly convicted, and certainly were not convicted prior to the jury’s verdict.
Even assuming some legal propriety in using the agreement as evidence during defendants’ trial, the assistant district attorney had no ground on which to contend that defendants broke the agreement; no one can contend that unless and until defendants are convicted. The assistant district attorney blatantly violated defendants’ constitutional right to be presumed innocent by asking the jurors to consider defendants’ violation of the agreement as evidence of guilt when the only evidence of a violation of the agreement would be a finding of guilt. The approach is logically and legally unsound, and unfair.
*615 Further, the only basis offered by the assistant district attorney for considering the agreement broken was his opinion and the opinion of a police officer. The opinions of prosecutors and police officers addressing the ultimate issue of guilt are irrelevant during a trial. The jury must presume defendants innocent, and should not presume, much less be told, that the opinion of the prosecutor and police officer is that defendants are guilty. If a bill of indictment cannot be considered evidence of guilt, then certainly a diversion agreement cannot be considered as such. Even if prosecutors and police officers are accepted as experts (which did not occur in this case), they are not permitted to opine as to a defendant’s guilt. If prosecutors and police officers áre experts and their opinions establish guilt, then why do we have courts, juries, and trials?
Defendants’ objections to the prosecutor’s use of the diversion agreement should have been sustained. The requested jury instruction should have been given. Defendants were unfairly prejudiced by the prosecutor’s use of the diversion agreement, and the failure to give the requested jury instruction requires that we reverse the convictions.